LOWER NECHES VALLEY AUTHORITY V. GERALD C. MANN, ATTORNEY GENERAL.

No. 8048. Decided January 20, 1943.
(167 S. W., 2d Series, 1011.)

*E. W. Easterling, Geo. L. Anderson,* both of Beaumont, and *Chapman & Cutler,* of Chicago, Illinois, for relator.

*Gerald C. Mann,* Attorney General, *C. F. Gibson, George W. Sparks,* and *Geo. W. Barcus,* Assistants Attorney General, for respondent.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a mandamus proceeding filed directly in this court by Lower Neches Valley Authority as relator against Honorable

Gerald C. Mann, Attorney General of Texas, as respondent, to compel him to approve two issues of revenue bonds of relator in the principal amounts of $10,000,000 and $1,000,000 respectively. It is admitted that the bond issues and bond record pertaining thereto have been duly prepared and submitted to relator for his approval, and that he has refused the same.

Relator was first created by an Act of the First Called Session of the 43rd Legislature, 1933, ch. 63, p. 169. The original Act was amended by an act of the Fourth called session of the same Legislature, 1934, chapter 17, page 47. The original Act of 1933 as amended by the Act of 1934 was again amended by the 47th Legislature, 1941, ch. 570, p. 1112. According to the several Acts above named relator was created a Conservation and Reclamation District by authority of Sec. 59 of Art. XVI of our State Constitution, generally known as the "Conservation Amendment."

The original and amended Acts creating this district and defining its powers taken together are very long and complicated. Also the bonds and bond contracts which the relator here seeks to have the respondent approve are very extended. One of these instruments contains 59 pages of printed matter and the other 96 pages. The bond record contains other typewritten matter not included in the instruments just mentioned. Obviously it would extend this opinion to an unreasonable length to even attempt an abridged statement of the contents of such instrument. We shall, therefore, content ourselves with such statement of these bonds and bond contracts as we deem necessary to make plain the decisions of law we shall make in this opinion. When these bonds and the record pertaining thereto were presented to the respondent for approval he refused the same, giving his reasons therefor. As we understand this record respondent urges all such reasons in this court as a bar to the mandamus here sought by relator. It, therefore, becomes proper for us to consider and decide the validity or invalidity of each of the reasons given by respondent for declining to approve these bonds.

The first objection to these bonds is as follows:

"1. That Chapter 570, Acts 1941, 47th Legislature of the State of Texas is uncertain and ambiguous as to the effect thereof upon the tenure of office of the members of the Board of Directors at the time of the approval of the Act and does not fix any procedure for the appointment of the two additional members to the Board of Directors."

■ In order to understand the above objection it will be necessary for us to review to some extent the legislative history of the Acts here involved. By the provisions of Sec. 3, Ch. 63, Acts First Called Session, 43rd Legislature, p. 170, it was provided that the management of all the affairs of this district should be vested in a Board of Directors consisting of seven members, all of whom should be freehold property taxpayers and legal voters of the district. It was also provided that such board of directors should be appointed by the State Board of Water Engineers, three members to be appointed for a term of two years, two for a term of four years and two for a term of six years. The validity of this board of directors was questioned in this court because in violation of Secs. 30 and 30a of Art. 16 of our State Constitution. Thereafter, Sec. 3 of the original Act creating this district was amended by ch. 570, Acts Regular Session, 47th Legislature, p. 1112. By the provisions of this last mentioned Act it is provided that the management and control of the affairs of this district shall be vested in a board of directors consisting of nine members, all of whom shall be freehold property taxpayers and legal voters of the State of Texas. It is then provided that such board of nine members shall be appointed by the State Board of Water Engineers, three members to hold office for a term of two years, three for a term of four years, and three for a term of six years. It is also provided that such board shall be appointed as soon after the passage of the Act as is practicable. It is clear that the amended Act terminated the terms of office of the members of the board of directors appointed under the original Act. Also the amended Act provided for the appointment of an entirely new board of nine members. For the reasons stated we overrule this objection.

The respondent's second objection to these bonds is as follows:

"2. That the title of Chapter 63 of the general and special laws passed by the 43rd Legislature at the First Called Session is repugnant to Section 35 of Article 3 of the Constitution of the State of Texas in that the title of said Act contains more than one subject."

■ Section 35 of Article 3 of our State Constitution provides that no bill, except general approproation bills shall contain more than one subject, which shall be expressed in its title. Both the body of this Act and its title are rather lengthly.

The Act creates this district and defines its power, purposes and mode of government. To our minds the title fully contains the subject matter of the legislation, and the Act contains but one subject. We overrule this objection.

The third objection to these bonds is as follows:

"3. That the title of Chapter 570 of the Acts of 1941 of the 47th Legislature is repugnant to Section 35, Article 3 of the Constitution of the State of Texas in that the title of said Act contains more than one subject."

We overrule this objection. This Act amends the first Act. It contains but one subject, and the title expresses the subject of the legislation.

■ The fourth objection to these bonds reads as follows:

"4. That Chapter 63 of the general and special laws, passed at the First Called Session of the 43rd Legislature, Chapter 17 of the general and special laws passed by the 43rd Legislature at the Fourth Called Session, and Chapter 570 of the Acts of 1941 of the 47th Legislature, are offensive to Section 56 of Article 3 of the Constitution of the State of Texas in that same are in effect local or special laws for the reason that the same purport to exempt property from taxation, and for other reasons."

Section 56 of Art. 3 of our Constitution prohibits the Legislature, except as otherwise provided in the Constitution, from passing any local or special law; "* * * exempting property from taxation * * *." This relator, by the Act creating it, is a conservation and reclamation district. It is also created as a State governmental agency, and body politic and corporate, by authority of Sec. 59 of Art. 16 of our State Constitution. It is settled that the Legislature, under such constitutional provision, may create such districts as this and exempt their bonds from taxation. Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629. The Act creating this district exempts its bonds from taxation. Lower Colorado River Authority is a district similar to this. It was created by an Act of the Legislature by the same constitutional authority that this district was created. See ch. 7, Acts Fourth Called Session, 43rd Legislature, p. 19. In passing on the identical question here involved, this court, speaking through this writer, said:

"Even should it be held that these bonds would be subject to taxation in this State, in the absence of the above statutory provision exempting them, a question we do not decide, still we find nothing in our Constitution which would deny the Legislature the power to exempt them from taxation. In this regard, it is generally held that, notwithstanding a constitutional prohibition against exempting all property from taxation, except such as is named in the Constitution, still the Legislature can exempt from taxation state bonds and bonds of state agencies issued in their governmental capacities, because such bonds are instrumentalities of government, and not property within the meaning of the above mentioned constitutional prohibition."

■ The above authority settles it that the Legislature may exempt the bonds of agencies such as this from taxation. The opinion in the Lower Colorado River Authority case is authority for holding that the act creating this district is not a local or special law within the meaning of the above constitutional provision.

The fifth objection to these bonds reads as follows:

"5. That said Chapter is unworkable because of the failure of the law to limit the functions of the Authority within the boundaries thereof."

■ The above objection is clearly disposed of in the opinion of this court in Lower Colorado River Authority v. McCraw, supra, and Brazos River Conservation and Reclamation District v. McCraw, 126 Texas 506, 91 S. W. (2d) 665. Both of the districts involved in the above cases function very much as does this district outside their respective boundaries. Such powers were upheld in the above opinions.

The sixth objection to these bonds reads as follows:

"6. That said Chapter 63 and said Chapter 570 do not comply with Section 30 and 30a of Article 16 of the Constitution of the State of Texas because there is not provided therein any coroporate Authority or governing body within the requirements of such sections of the Constitution."

■ Section 30 of Article 16 of our Constitution limits the terms of officers to two years except where otherwise provided in such instrument, and except as to Railroad Commissioners. Sec. 30a of the same article authorizes the Legislature to pro-

vide by law for such boards as may be provided by law, the members thereof to hold their respective office for a term of six years, one-third to be elected or appointed every two years. This law, as amended by ch. 570, Acts 47th Legislature, fully complies with this last mentioned constitutional provision. Lower Colorado River Authority v. McCraw, supra.

The seventh objection to these bonds is as follows:

"7. That the bonds authorized by the resolution adopted by the Board of Directors of the Authority are not authorized for a proper corporate purpose within the limitation of Section 59a of Article 16 of the Constitution of the State of Texas and the provisions of the enabling legislation in that:

"(a) The proceeds of all of the bonds are expressly authorized to be used for the payment of the interest on all of the bonds during the period of construction, and to and including the first interest payment date thereafter.

"(b) The proceeds of the bonds are expressly authorized to pay the cost of construction of a larger reservoir, dam, canal, and other waterworks for the obtaining and transmission of a water supply, and in connection therewith, to pay the cost of acquisition of existing privately owned waterworks facilities for the delivery of water to the point of sale, including the expenses incident to such construction and acquisition."

■ As to Objection 7a, supra, it is provided by these Acts that this relator may borrow money for proper corporate purposes. Also the Act authorizes the issuance of what are generally known as revenue bonds. The district cannot levy any taxes or issue any bonds payable out of taxation. Only the revenues of the district can be used for the payment of these bonds. Section 20 of the original Act provides that the district may make such contracts in the issuance of its bonds as may be necessary to insure the marketability thereof. The district must issue bonds in order to carry out and accomplish the very purpose of its creation. Manifestly it can have no revenues to pay interest until it becomes a going concern, that is, until it comes into operation. The purposes of this district as disclosed by the Act contemplate a considerable period of development and construction. As already shown such purpose cannot be accomplished without the borrowing of money by the district, and the issuance of revenue bonds in evidence thereof.

The Act itself fully authorizes the borrowing of money for construction and development, and further such Act fully authorizes the district to issue its revenue bonds in evidence of the obligations so incurred. Under such circumstances, and under the provisions of this Act, we are compelled to the conclusion that interest paid on money borrowed during the course of construction, and one interest payment thereof is a reasonable contract provision. Where it is important to ascertain the cost of construction or reproduction of public utilities in rate cases, it is proper to include in such cost interest on money invested or borrowed during construction and before operation. Stated in another way, such interest is a part of the very capital investment. 43 Am. Jur. p. 562; 51 C. J. p. 18; Ohio Utilities Co. v. Public Utilities Commission, 267 U. S. 369, 69 L. ed. 556, 45 S. Ct. 259. These authorities hold that interest paid during construction on a public utility is a part of construction cost or capital investment. Since this is true we think that the interest paid by this district on its bonds during construction is a part of such construction. We overrule this objection.

■ As to Objection 7b, supra, it appears that there is within this district a privately owned utility which is performing some of the functions which this district will perform. It is proposed to purchase the properties of this utility out of a part of the proceeds of these bonds. We find nothing in the Act which would prohibit this. It will be to the advantage of this district to acquire such other system. By so doing it can better serve the purposes for which it was created, and in so doing it will not injure the patrons of the utility purchased.

The eighth objection to these bonds is as follows:

"8. That the proceedings supporting the issues of said bonds are not in compliance with the enabling legislation therefor in that such legislation does not expressly authorize the issue of bonds in such manner for the following reasons:

"(a) The statute is not clear as to whether there is express authority to issue both senior and junior bonds to finance the acquisition and construction of the System;

"(b) Although the second lien bonds to be issued by the Authority will be delivered simultaneously with some of the first lien bonds, and prior in time to the delivery of the other first lien bonds, there is no express authority in the statute for the maintenance of the junior status of such second lien

bonds, as is provided for by the first and second lien Indentures;

"(c) The bond proceedings fix the order of priority of use of revenues as follows:

"First, operation and maintenance expenses of the System;

"Second, deposits in the Sinking Fund for the benefit of the first lien bonds;

"Third, deposit of a stated amount monthly in the Contingency Fund;

"Fourth, beginning with the month of May, 1947, interest requirements on the second lien bonds.

"Such order of priority of use of the gross revenues of the authority is not in accordance with the enabling legislation."

■ As to Objection 8a, supra, we think that when these Acts are construed as a whole they fully authorize the issuance of different issues or series of bonds so that the lien securing one issue or series may be superior to the lien securing another issue. The Acts here involved create this district with full powers to accomplish its political and corporate purposes as a public utility, and as a body politic and corporate politic, and a governmental agency. There is no express prohibition against the issuance of first and second lien bonds. In fact, sec. 18 of. ch. 63 of the Original Act creating this district expressly shows that first and second lien bonds are contemplated by the Act. Also the very power to issue revenue bonds and pledge revenues to secure the same would carry with it the power to define the priority of liens by contract, unless such power is denied in the Act. We overrule this objection.

■ As to Objection 8b, supra, it appears, as already shown, that these bond contracts and bonds, as submitted to the respondent and to this court, provide for the issuance of two series of bonds, one an issue of $10,000,000 and the other an issue of $1,000.000. Both issues are secured or payable out of the revenues of relator. The first lien issue is also secured by a lien on the physical properties of the district. It is, however, specifically provided in the bond contracts and bonds that the lien securing the $10,000,000 issue is first and superior to the lien securing the $1,000,000 issue. The bond contracts provide that the first issue of $10,000,000 and the second issue of

$1,000,000 shall both be issued and sold simultaneously, that is, at the same time. It is contended by respondent that such contract provision is in violation of Sec. 18 of ch. 63, Acts First Called Session, 43rd Legislature, p. 177. This is the original Act creating this district. This statutory provision, so far as applicable here, reads as follows:

"* * * If more than one series of obligations shall be issued under the provisions of this Act payable from and secured by identical revenues, priority of lien against such revenues shall depend on the time of delivery of such obligations, each series enjoying a lien against such revenues prior and superior to that enjoyed by any other series of obligations subsequently delivered, provided, however, that as to any issue or series of obligations which may be authorized as a unit but delivered from time to time in blocks, the Board of Directors may in proceedings authorizing the issuance of such obligations provide that all of the obligations of such series or issue shall be co-equal as to lien regardless of the time of delivery."

It seems to be contended that these bonds and bond contracts violate the above statutory provision because such statute defines priority of liens in the order of priority of delivery. We are unable to sustain this contention. We do not here have an instance of one series of bonds being delivered prior to another series. We simply have a contract providing for a simultaneous issuance of sale. It follows that the provisions of Sec. 18, supra, have no application here. It further follows that the provisions of these contracts relating to priority of liens are not repugnant to or in violation of the portion of Sec. 18 above quoted.

■ As to Objection 8c, it does not point out wherein these bond contracts violate these Acts. From a study of the several Acts we are unable to find wherein the provisions of these bonds and bond contracts violate any of said Acts in the particulars mentioned in this objection. We have already said that the district may issue more than one series of bonds and define priority of liens by which they are secured. This being true proper contracts to enforce payment and priority of payment are proper.

Objection No. 9 reads as follows:

"9. The recital on the face of the bonds, as required by Section 17 of said Chapter 63, that such bonds do not constitute

an indebtedness or pledge of the credit of the Authority and that such bonds shall never be paid in whole or in part out of any funds raised or to be raised by taxation would relieve the Authority from any obligation to repay the loan evidenced by such bonds; such recital being inconsistent with any obligation on the part of the Authority to repay such loan from the revenues of the Authority and to secure such loan by a mortgage on all of the properties of the Authority."

Section 17 of the original Act creating this district, Chap. 63, Acts First Called Session 43rd Legislature, p. 176, so far as applicable to the above objection, provides:

"Sec. 17. Each issue of obligations authorized hereunder shall constitute a separate series and shall be appropriately designated. Such obligations shall not constitute an indebtedness or pledge of the credit of such district, shall never be paid in whole or in part out of any funds raised or to be raised by taxation, and shall contain a recital to that effect. * * *"

■ The bond contracts follow the statute and contain the same provision. The statute and the bond contracts simply mean that these bonds cannot become a debt against the district in the sense that the properties in the district can be taxed to pay the same. Lower Colorado Authority v. McCraw, supra. Neither the statute nor the same provision in the contracts have effect to relieve the district from the obligation to repay the loan evidenced by these bonds out of revenues. The lien or mortgage on the properties and revenues of the Authority are in full compliance with the statute, and violate no constitutional provision.

Objection No. 10 reads as follows:

"10. The mortgage of the properties of the Authority as set forth in the Trust Indenture securing the first mortgage revenue bonds is unauthorized by the Constitution and not in accordance with the enabling legislation."

■ We overrule this objection. Section 23 of Chap. 63, supra, as amended by Acts 47th Legislature, p. 1113, supra, expressly authorizes a mortgage or lien on the properties belonging to this district, including the revenues to be derived from the operation of its system to secure the repayment of money borrowed. We know of no constitutional provision that is violated

by the above statutory provision, and no such provision has been pointed out to us. This court has repeatedly approved bonds secured as these bonds are secured.

Objection No. 11 reads as follows:

"That Chapter 25, Acts 1939, 46th Legislature of the State of Texas, and Chapter 144, Acts 1941, 47th Legislature of the State of Texas, provided for the repayment of the State of Texas of the appropriations therein made to the Authority from the first revenues of the Authority, and the bond proceedings make no provisions for the repayment thereof in accordance with the terms of said laws:"

House Bill 828, ch. 25, p. 503, Special Laws, Acts 46th Legislature, 1939, so far as applicable here reads as follows:

"For the purpose of completing prosecution of its application to the Public Works administration, and the Reconstruction Finance Corporation, for Federal Government assistance in giving effect to the purposes for which the Lower Neches Valley Authority was created, and for the purpose of defraying such other necessary and proper expenses of the Lower Neches Valley Authority, a water conservation, control and utilization district, created by virtue of Chapter 63, Senate Bill No. 38, Acts of the First Called Session of the Forty-third Legislature, there is appropriated out of the General Fund of the State of Texas, such as not otherwise appropriated, the sum of Ten Thousand Dollars ($10,000), which may be withdrawn from time to time on warrants signed by the Chairman of the Board of Directors and the Treasurer of the said Lower Neches Valley Authority.

"Sec. 1a. This appropriation shall be treated as a loan from the State of Texas to the Lower Neches Valley Authority, and shall be repaid to the State of Texas by the Lower Neches Valley Authority from the first revenue of the Authority."

So far as applicable here, ch. 144, Acts 47th Legislature, 1941, p. 199 (see page 201), reads as follows:

"Sec. 7a. There is hereby appropriated for the use of the Lower Neches Valley Authority, a conservation and reclamation district created by virtue of an Act of the Forty-third Legislature, out of any funds in the State Treasury not heretofore otherwise appropriated, the sum of Ten Thousand Dollars ($10,000), which may be withdrawn from time to time on

warrant signed by the Chairman of the Board of Directors and the Treasurer of the said Lower Neches Valley Authority.

b. This appropriation shall be treated as a loan from the State of Texas to the Lower Neches Valley Authority, and shall be repaid to the State of Texas by the Lower Neches Valley Authority from the first revenue of the Authority."

■ A reading of the above Acts will demonstrate that each of them appropriates to this District, purely as a loan, the sum of $10,000, or $20,000 in all. Each of such Acts makes it the statutory duty of the District to repay such loans to the State out of the District's first revenue. We understand that the District has accepted and used both appropriations for the purposes authorized by the respective Acts making them. The contracts under which these bonds will be issued and sold, mortgage the very same revenue as a part of the security behind them. Manifestly, to the extent of $20,000 in revenue, the contract security behind these bonds is burdened with the prior right of the State to receive and appropriate such sum of $20,000 to its claims against the District. It follows that, for all practical purposes, $20,000 of the contract security behind these bonds is not available for such purpose, and such being the case, it cannot be said that it is a ministerial duty of the respondent to approve them. It is beside the question to argue that the Acts making the above appropriations do not create any lien, or liens, on the first revenues of this District to secure the State. The Acts make it the statutory duty of the District to use its first revenues to repay these loans, and such being the case, so long as they remain unpaid the District does not possess the right to use these revenues for any other purpose. It is not only the right, but the duty, of the Attorney General to withhold his approval of revenue bonds if the security purporting to be behind them should fail, either in whole or in part.

On account of our ruling with reference to the $20,000 claim of the State against the revenues of this District, the mandamus here prayed for is refused.

Opinion delivered January 20, 1943.