# Philadelphia v. Citizens Passenger Ry. Co., Appellant.

[Marked to be reported.]

*Street railways—Extension—" Between "—Act of March 22, 1865.*

Under the act of March 22, 1865, P. L. 568, authorizing the Citizens Passenger Railway Co. to extend its road northwardly on Tenth and Eleventh streets in Philadelphia, " between Montgomery street and the Germantown road, with the right to connect the same on any street between these two points," said company has no right, even with the consent of councils, to construct or operate an extension of its railway on Germantown road, or avenue.

*Consent of councils—Ordinances.*

The Citizens Passenger Railway Co., by its charter was authorized to occupy certain streets of the city of Philadelphia, with consent of councils ; and such consent shall be taken to be given if councils shall not within thirty days signify their disapproval.   Councils, within the time limited, declared their disapproval but further provided that if the company would bind itself to be subject to all ordinances passed or to be passed the disapproval should have no effect.   The company so agreed. By Act of March 22, 1865, the company was authorized to extend its road on certain streets, subject to all the limitations and restrictions, and with all the privileges granted under the act of incorporation.   Subsequent ordinances required the consent of councils for the laying of railway tracks.   *Held,* that the company was subject to the ordinances passed subsequent to the act of 1865.

Argued Jan. 21, 1892.   Appeal, No. 164, July T., 1891, by defendant, from decree of C. P. No. 4, Phila. Co., March T., 1891, No. 841, awarding injunction.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Bill in equity to restrain laying of street railway tracks.

The bill, after reciting statutes and ordinances incorporating defendant company and authorizing the location of its railway, averred that defendant company threatened and intended to extend its line along Germantown Avenue, as it claimed it had authority to do, as stated in the opinion of the Supreme Court. The bill averred that defendant had no authority to so lay its tracks, and that it had not obtained the consent of councils, and prayed for an injunction (1) to restrain the laying of the proposed tracks and (2) general relief. The answer asserted authority to lay the tracks and that consent of councils was not required. It also averred that the board of surveys and regulations had been required by mandamus from C. P. No. 1, Sept. T., 1890, No. 487, to approve the plan proposed by defendant. Germantown avenue leaves the line of Tenth street at Indiana street and crosses Eleventh street in the next square above.

The court granted the injunction, in the following opinion, after reviewing the facts, by ARNOLD, J.:

"It is well to observe here that these ordinances [of 1860 and 1869, recited in opinion of Supreme Court] to prevent the removal of cobblestones, have no restraining force and do not apply to the streets in which a railway company is authorized to lay its tracks by its charter (Philadelphia v. Empire Passenger Ry. Co., 3 Brewster, 547, 1869), and that, while constructing a railway in a street is not a nuisance, when the charter authorizes the occupation of the streets (Faust v. Second and Third Streets P. Ry. Co., 3 Phila. 164, 1858), it is a nuisance per se when it is constructed without authority (Attorney-General v. Lombard and South Street P. Ry. Co., 1 W. N. 489, 1875). The graded and paved streets of the city are artificial roads. The city is the owner of them and the paving materials in them, so far as they may be said to have an owner, and the consent of the city must be obtained by passenger railway companies when their charters require them to do so (Commonwealth v. Central Passenger Ry. Co., 52 Pa. 506, 1866), but a street passenger railway company, incorporated prior to 1874, with nothing in its charter making the consent of the city councils a prerequisite to the exercise of its powers in the extension of its road, may make such extension, without the

consent of councils, neither the constitutional amendment of 1857, the constitution of 1874, nor the act of May 23, 1878, P. L. 111, repealing the unrestricted right of the company to lay its tracks in the streets named in its charter (Williamsport Passenger Ry. Co. v. Williamsport, 120 Pa. 1, 1888).

" This statement of the facts and law leads to these inquiries: Has the defendant the right to occupy Germantown avenue for an extension of ' its road, or as a connection between its tracks from Tenth to Eleventh streets—and is it under an obligation to obtain the consent of the city councils to the occupation of the public streets hereafter ?

" Germantown avenue, at its junction with Tenth street, which at a point about two hundred and fifty feet north of Cumberland street runs almost due north, occupies a part of the ground which would be taken for Tenth street, were it opened.   But as the necessity for opening Tenth street was avoided by the existence of Germantown road in its place, the legislature, by the act of April 6, 1848, P. L. 359, vacated Tenth street, as the same is laid down in the plan of the city of Philadelphia, from its intersection with the Germantown road northward to Indiana street, running along the edge of the said Germantown road.   Germantown avenue or road was formerly a part of the Germantown and Perkiomen turnpike road.   At the time the defendant's charter was obtained (1858) and the date of its supplements (1863 and 1865) Germantown road was a turnpike owned by a company having a right to demand tolls for using it.   It was not freed from tolls until 1869, when it became a public street, subject to municipal control.   When the defendant company obtained its last grant of a right to extend its road in 1865, we may presume that the legislation conferring the power to extend its road was draughted by its own agents, for its own benefit, and with a view to give it further privileges without any expense which might be avoided.   Any attempt to occupy Germantown road in 1865 would have been met with a demand by the turnpike company for compensation; for, while the legislature might authorize a railway company to occupy a turnpike road, it would have been subject to the constitutional terms of making compensation.   .Hence the grant was of authority ' to extend the road northwardly on Tenth and Eleventh streets, between

Montgomery street and the Germantown road, with the right
to connect the same on any street between these two points,
subject to all the limitations and restrictions, and with all the
privileges granted to the said company under their act of incor-
poration.' The right was to be exercised between German-
town road and Montgomery street.

" This word ' between ' has different meanings, according to
the use to which it is applied. In measuring space it excludes
the objects which bound it. Webster describes it in this appli-
cation as ' the intermediate space of, without regard to distance,'
and gives, as an instance, the phrase, ' New York is between
Boston and Philadelphia.' So Pennsylvania is between New
Jersey and Ohio, and the Delaware river is between New Jer-
sey and Pennsylvania, but neither is part of the other. In
Revere v. Leonard, 1 Mass. 91, there was a grant of a right to
convey water through any dams, gates, etc., between a mill
and a dam, and it was contended if the grant could not be
otherwise satisfied, it would be reasonable and equitable to con-
strue the word between so as to include the dam, but the court
said that the words of the deed were necessarily exclusive of
the termini, and that it was against all legal principles to go
out of the deed to inquire into the meaning of those and like
words, there being no ambiguity in them. In case of State v.
Godfrey, 12 Maine, 361, an act of the legislature authorized the
construction of a dam between the foot of Rose's or Troat's
Falls and McMahon's Falls, and it was contended that the
words of the charter included McMahon's Falls, but the court
said, ' that which lies between a given place and another is
quite distinct from the place given on either side. Perhaps no
word in our language has a more precise and definite meaning
than between. It indicates an intermediate space, which ex-
cludes, and cannot include that to which it refers. If land is
granted between one township and another, both are excluded
from the grant. If land is conveyed lying between lots num-
ber one and number three, it could not be pretended that either
of those lots passed by the deed.' The word ' between ' in the
charter of a railroad company confines the road to the point
from which it is authorized to be constructed. It cannot be
carried beyond that point (Plymouth R. R. Co. v. Colwell, 39
Pa. 337, 1861). It has the same effect as a combination of the

words 'from' and 'to,' as in the case of the Commonwealth v. Erie & Northeast R. R. Co., 27 Pa. 339, in which they were held to prevent the company from constructing its road into the place from which it was to be built. The same interpretation on similar words was given in the case of Rex v. Inhabitants of Upton-on-Severn, 6 C. & P. 133. A like rule applies in proceedings to lay out roads, in which it is necessary for the viewers to follow the petition and designate the termini of the road as therein fixed. 'To go beyond them,' said the court, 'is to exceed the authority. . . . If they can go beyond one terminus, they may disregard the other:' Road in Lower Merion, 58 Pa. 66, 1868. It has been held that the right to construct a railroad across a street does not give the right to construct it diagonally across, for that would be along the street: Pennsylvania R. R. Co.'s Appeal, 93 Pa. 150, 1880. Other cases show how strict is the construction put on this word 'between.' It has been said that it must be the most direct line and straight as it is possible to run it: Leigh v. Hind, 9 B. & C. 774; Mouflet v. Cole, 42 L. J. Ex. 8; Brown v. Brown, 6 Watts, 54; Beale v. Patterson, 3 W. & S. 379.

" It is contended on behalf of the defendant that it can go upon Germantown avenue to make a connection between its Tenth and Eleventh street tracks. Its charter authorizes it to connect on any street between two points, that is, between Montgomery street and Germantown road. Now it is undoubtedly true that the words street, road and avenue are synonymous, and are included in the more general designation of highway ; wherefore the fact that Germantown avenue was never called a street, would not be of much importance, if it had been a public highway in 1865; but as all charters are to be construed as of the date of their enactment (Commonwealth v. Erie & Northeast R. R. Co., 27 Pa. 339), when we consider that Germantown road was a turnpike road in 1865, that the legislature could not authorize the defendant to enter upon and lay its tracks on that turnpike without compensation, and that the defendant was looking for a public street or streets between Montgomery street and Germantown road, on which it could connect its road without further expense than the cost of construction, it is not giving the charter too strict an interpretation to say that what the defendant wanted, and

what the legislature gave it, was a public street without cost or delay, and not a turnpike road for which it would have been compelled to pay damages. That Germantown avenue has since become a public street, does not bring it within the view of the legislature at the time of making the grant in 1865, when it was not a public street. Besides, a street cannot be between itself and another street or point.

" The order of the Court of Common Pleas, No. 1, upon the board of supervisors, to approve the plan of the defendant for laying its tracks on Germantown avenue, settled no rights. It was merely an order to approve the plan of constructing the road, the board having no power to determine whether the charter of the defendant gave it the right to occupy the avenue or not.

" On the other point we are of opinion that the defendant is bound by its agreement with the city, made in compliance with the ordiance of April 16, 1858, to obtain the consent of the city councils to all future extensions of its road, as required by the ordinances of February 28, 1860, and May 7, 1869. This is in accordance, also, with the spirit of the constitution of 1874, which provides that ' no street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities.' The power to dispose of rights in the few remaining streets has been taken away from the legislature, and is now vested in the municipal authorities. Independent of this, a correct construction of the charter of the defendant, and its supplements, requires the defendant to have the municipal consent before occupying any more of the public streets. When a charter requires the consent of the city councils, and a supplement authorizes the extension of its road without consent, a second supplement, which is silent as to consent, is to be taken subject to the requirement of the charter that consent shall be obtained: City of Philadelphia v. Lombard & South Street Pass. Ry. Co., 4 Brewster, 14, 1866. This decision was made on a state of facts almost identical with those of the present case."

*Errors assigned* were action of court in holding (1) appellant not authorized to lay the track on Germantown avenue; and (2) that consent of council had not been given.

*John H. Sloan* and *David W. Sellers*, for appellant.—The legislature is presumed to have known in 1865 that Tenth street had been vacated. The act of 1865 authorized the track to be extended on Tenth and Eleventh streets to Germantown road. Here were two points to be connected, if a convenient circuit should be made. The right to connect is to connect these two points on any street. If Germantown avenue is a street between these two points it is necessarily included. This was the obvious intent of the statute. The intent governs the interpretation : Ihmsen v. Nav. Co., 32 Pa. 157.

The act of 1865 was a supplement to the charter. It provided that consent should be deemed to be given if councils did not signify their disapproval within thirty days. This is an approved legislative mode of securing consent : Union Canal Co. v. Gilfillin, 93 Pa. 95 ; Same v. Same, 109 U. S. 401. Consent once given is final : Musser v. Arch St. Ry., 5 Clark, 470 ; and cannot be withdrawn by subsequent ordinance : Hestonville v. City, 89 Pa. 219.

*Charles B. McMichael*, with him *Abraham M. Beitler*, and *Charles F. Warwick*, for appellee.—The opinion of the court below has fully discussed the questions presented.

The answer to the argument upon the first assignment of error is, that at the date of the passage of the act of March 22, 1865, Germantown road was not a street and Tenth street had been vacated.

The answer to the argument on the second assignment of error is, that defendants made an agreement with the city in compliance with the ordinance of April 16, 1858, to obtain the consent of the city councils to all future extensions of its road, and it is bound by this agreement.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

It is contended that the learned court erred in holding :

1st. "That the appellant corporation was not authorized to lay any track on Germantown avenue."

2d. "That the consent of the councils had not been given to appellant for the construction of the extension authorized by the act of March 22, 1865."

The facts of the case, in connection with the acts of assembly and ordinances of councils, relating to the questions in-

volved in these specifications of error, are so fully presented in the clear and comprehensive opinion of the court below that extended reference to either is unnecessary.

It was clearly incumbent on the company to show its authority from the commonwealth to occupy Germantown avenue, either for the purpose of extending its road thereon or making a connection between its tracks on Tenth and Eleventh streets. If that authority was not given, either in express terms or by necessary implication, the injunction restraining the "company from laying any tracks on, along and upon Germantown avenue, from its junction with Tenth street north to Indiana street," etc., was rightly awarded.

The act of March 25, 1858, P. L. 166, incorporating the company to construct a passenger railway on Tenth and Eleventh streets, etc., to Columbia avenue on the north, required, among other things, "that before the company shall use and occupy the said streets, the consent of councils . . . . shall be first obtained; and said consent shall be taken and deemed to have been given if said councils shall not within thirty days after the passage of this act, by ordinances duly passed, signify their disapproval thereof; and the said councils may, from time to time, by ordinance, establish such regulations in regard to said railway as may be required for the paving, repaving, grading, culverting and the laying of gas and water pipes in and along said streets, and to prevent obstructions thereon."

By the first section of an ordinance, duly passed within the time specified, councils declared their disapproval of said act; but, in the second section thereof, it was provided that if the company shall, within ninety days and before using or occupying any of said streets, file in the office of the city solicitor a written obligation binding the company to observe and be subject to all ordinances of the city in relation to passenger railways then in force or at any time thereafter to be passed, "then the provisions of the first section of this ordinance shall be of no effect." The obligation thus required was accordingly filed and the company proceeded to construct its road. The ordinances to which appellant thereby became subject and bound itself to obey, require passenger railway companies, among other things, to conform to established street grades; to sub-

mit all plans, courses, and styles of rails to the board of surveyors for approval; to lay flag stones at crossings or intervals of two hundred and fifty feet; to pave, repair and repave the streets occupied by them; to keep said streets clear of snow; to run their cars at a safe rate of speed; to pay license for each car run on the road, etc. In the same connection, the learned judge of the common pleas referred to ordinances of February 28, 1860, and May 7, 1869, prohibiting the department of highways from granting any permit to remove pavement for the purpose of laying passenger railway tracks, and prohibiting city surveyors from locating any such track until the consent of councils to the construction of the road has been given.

As we have already seen, the northern limit of appellant's right of way under its original charter is Columbia avenue.

By act of April 11, 1863, P. L. 319, the company was authorized to extend its tracks to Montgomery street and connect them by a track on said street. Afterwards by act of March 22, 1865, P. L. 568, it was further authorized, whenever and at such times as the public convenience may require, to extend its "road northwardly, on Tenth and Eleventh streets, between Montgomery street and Germantown road, with the right to connect the same or any street between these two points, subject to all the limitations and restrictions, and with all the privileges granted to the said company under its act of incorporation. In pursuance of these acts the road was extended northwardly on Tenth and Eleventh streets to Cumberland street and there connected by a track laid on said last mentioned street. It was still further extended on Eleventh street, with a single track and turn-outs, to Cambria street, four squares north of Cumberland street.

Waiving for the present, and for argument sake merely, any question as to the consent of councils, or the necessity for such consent, that extension appears to be in accordance with the provisions of said acts; but, it is claimed by appellant that the act of 1865 authorizes the further extension of its Tenth street line, northerly, on Germantown avenue to Indiana street; also the extension of its Eleventh street line to same street, and a connection, between the thus extended lines, by a track on said Indiana street. The answer to this contention is, that no authority can be found in said act, or elsewhere, to locate any

part of its road on Germantown avenue.   As defined by the
very words of the act above quoted, the authority to extend,
northerly, on Tenth and Eleventh streets, is expressly limited
to the portions of said streets, respectively, lying "between
Montgomery street and Germantown road;" that is to say,
between the north line of the former and the southerly line of
the latter.   The northerly limit of the grant is the southerly
line of said road, and that necessarily precludes the right to
enter upon and occupy any part of said road.   The word "be-
tween" indicates an intermediate space, which excludes and
cannot include that to which it refers; in this case the street
and the road.   If land be granted between one township and
another, both are clearly excluded from the grant.   If land,
described as lying between lot number one and lot number
three, is conveyed, it cannot be pretended that either lot or any
part thereof passes by the deed: 2 Am. & Eng. Enc. of Law,
186.   The word under consideration is sometimes used in a
different sense, but it is too plain for argument that, in the act
in question, it was employed in its primary and general signifi-
cation above stated.   If it had been the legislative intention to
include the Germantown road, or any part thereof, in the grant,
it would have been an easy matter to clearly express it, and
doubtless it would have been so done.   To hold as contended
for by appellant would require us to ignore the sound and well
settled principle that, in construing grants of power to such
corporations, whatever is not given in clear and express terms
or by necessary implication, is conclusively considered to
have been withheld.   There appears to be a growing disposi-
tion on the part of some classes of corporations to reverse the
principle and arrogate to themselves the right to do anything
that is not prohibited by their charters.   No such tendency
should be encouraged.

For these and other reasons fully elaborated in the opinion
of the court below we think there was no error in ruling as
complained of in the first specification.

The learned court was also right in holding that the consent
of city councils has never been given to appellant to construct
and operate the extension authorized by the act of March 22,
1865.   The company's agreement with the city, binding it to
obtain the consent of councils to all future extensions of its

road, as required by the ordinances of February 28, 1860, and May 7, 1869, is undoubtedly in force and does not appear to have been complied with.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

*Street railways—Extension—" Between "—Act of March 22, 1865.*

Under the act of March 22, 1865, P. L. 568, authorizing the Citizens Passenger Railway Co. to extend its road northwardly on Tenth and Eleventh streets in Philadelphia, " between Montgomery street and the Germantown road, with the right to connect the same on any street between these two points," said company has no right, even with the consent of councils, to construct or operate an extension of its railway on Germantown road or avenue.

