TEXAS TURNPIKE AUTHORITY v. JOHN BEN SHEPPERD, ATTORNEY GENERAL

No. A-5157. Decided May 11, 1955.
(279 S.W. 2d Series 302)

*McCall, Parkhurst & Crowe* and *Paul B. Horton, Locke, Locke & Purnell* and *Eugene M. Locke,* all of Dallas, for relators.

*John Ben Shepperd,* Attorney General, *Frank Pinedo* and *Elbert M. Morrow,* Assistants Attorney General, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

In this original proceeding Texas Turnpike Authority, relator, here seeks a writ of mandamus directing the Attorney General to approve the Dallas-Fort Worth Turnpike Revenue Bonds issued by relator in the sum of $58,500,000, under the provisions of Vernon's Ann. Stat., Art. 6674v, Turnpike Projects.

The Attorney General refuses approval for the following reasons:

"1. The powers granted to the Texas Turnpike Authority are so broad, unlimited and undefined that the result is an unlawful delegation by the Legislature of its authority in violation of

Section I of Article II and Section I of Article III of the Constitution of Texas.

"2. Said Texas Turnpike Act authorizes the issuance of bonds which constitute the creation and assumption of debt on behalf of the State and the giving or lending and a pledge of the credit of the State in violation of Article III, Section 49, 50, and 52-b.

"3. The Texas Turnpike Act does not give the Authority the unlimited right to condemn any property located within cities, towns, villages or other political subdivisions and does not grant the unlimited power to condemn property already devoted to public use."

■ The Attorney General concedes that prior decisions of this Court, namely, Texas National Guard Armory Board v. Mc-Craw, 132 Texas 613, 126 S.W. 2d 627, and Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S.W. 2d 629, determine the question raised as to the delegation of legislative power against his contention unless the fact that the Lower Colorado River Authority was created pursuant to a specific direction of the Constitution, (Art. 16, Sec. 59-b), makes a material and valid distinction. He argues that in the absence of any constitutional provision concerning the establishment of toll roads that the delegation of power to the Turnpike Authority to fix the tolls to be charged and pledging the revenues therefrom to the discharge of the bonds permits the creation of contractual obligations which cannot be impaired and thus contravenes Art. 12, Secs. 3 and 5 of the Constitution. The Court, in the Lower Colorado River Authority, does point out that under Art. 16, Sec. 59b "this District is a governmental agency and the Legislature had the right to clothe it with the powers set out in Sec. 8 of this Act." (Art. 8280-107). Nevertheless no provision of the Constitution prohibits the Legislature from creating a governmental agency and body politic as provided in the Act under consideration and clothing it with the powers specified in Sec. 5f. Jones v. Alexander, 122 Texas 328, 59 S.W. 2d 1080.

As said by Judge Critz in Lower Colorado River Authority, unless the Legislature has the right to empower the district to fix rates and charges, the bonds of the district would be "idle and vain things."

Moreover Art. 12 of the Constitution deals with private corporations, and we think, has no application here. The cap-

tion of the Act creating the Turnpike Authority,[1] recites the creation of the Authority as a body politic and agency of the State. Section 3 of the Act constitutes the Authority an agency of the State of Texas and provides that the exercise by the Authority of the powers conferred by the Act shall be deemed and held to be an essential governmental function of the State. The Authority may sue and be sued in its own name. (Sec. 5c).

It was likewise held in Texas National Guard Armory Board that the power of the Board to fix and determine rentals to be paid by the State was not a delegation of legislative authority prohibited by the Constitution.

As to the second contention, namely, that the Turnpike Projects Act authorizing the issuance of bonds which constitute the creation and assumption of debt on the part of the State, likewise this is squarely settled by the two cases above referred to, and others which may be cited. Brazos River Conservation and Reclamation District v. McCraw, 126 Texas 506, 91 S.W. 2d 665: City of Dayton v. Allred, 123 Texas 60, 68 S.W. 2d 172; City of Houston v. Allred, 123 Texas 334, 71 S.W. 2d 251; Watrous et al v. Golden Chamber of Commerct et al., 121 Colo. 521, 218 Pac. 2d 498.

The Act specifically provides that the bonds issued shall not be deemed to constitute a debt of the State or of any political subdivision or the pledging of the faith and credit of the State or of any such political subdivision but shall be payable solely from the fund derived from revenues. Language could not make clearer the intention of the Legislature that the obligations should never in any manner become a debt due and owing by the State of Texas. The Attorney General admits that the Armory Board and Lower Colorado River cases are controlling, but calls our attention to Sec. 52b, Art. 3, Constitution of Texas, adopted as an amendment to the Constitution at the last General Election (1954). This section, we think, adds nothing of substance to Sec. 50 of that Article except to name expressly and include any agency, public or otherwise, authorized to construct, maintain or operate toll roads and turnpikes. It in no way limits the effect of the two decisions mentioned.

■ The third point is more heavily emphasized, and that deals with the right of the Turnpike Authority to condemn private property located within cities, towns and villages as well as property already devoted to public use.

---

1.—Acts 53rd Legislature, 1953, p. 967.

A consideration of all provisions of the Turnpike Projects Act leaves no doubt that the Legislature clearly intended for the Turnpike Authority to have full powers of condemnation of public and private property whether or not located within the boundaries of any city or other subdivision of the State.

Section 8 of the Act reads in part as follows:

"Whenever a reasonable price cannot be agreed upon, or whenever the owner is legally incapacitated, or is absent, unknown, or unable to convey valid title, *the Authority is hereby authorized, and empowered to acquire, by the exercise of the power of condemnation* and in accordance with and subject to the provisions of any and all existing laws and statutes applicable to the exercise of the power of condemnation of property for public use, *any land, property rights, right-of-ways, franchises, easements or other property deemed necessary or appropriate for the construction* or the efficient operation of *any Turnpike Project. * * * *.*" (Italics ours).

The Attorney General does not question the power of the Legislature to authorize one instrumentality of government to condemn the land and property of another. City of Tyler v. Smith County, 151 Texas 80, 246 S.W. 2d 601. He admits the right of the Legislature to provide for the condemnation of private property located within limits of a city or town. He argues, however, that the right of condemnation given by the Legislature to this Authority is limited in that it is "subject to all existing laws and statutes relating to the power of condemnation." He maintains that under "existing laws" a home-rule city is vested with exclusive dominion, control and jurisdiction over its streets, avenues, highways, boulevards and public grounds. Art. 1175, Vernon's Ann. Civ. Stat., Subd. 6, and also Arts. 1082, 1201, 1202 and 1203. He refers to Attorney General's Opinion No. 0-7108 (1946) which answers the following question:

"May the Highway Department, or the county, acting on behalf of the Department, as provided in Article 6674n, Revised Civil Statutes, 1925, acquire by purchase or by condemnation the rights of way required in a home-rule city for the construction of a state highway?"

The conclusion that the county was not empowered to condemn property within the limits of a city, was reached after a rather exhaustive analysis of the statutes and decision. He found support in Adams v. Rockwall County, Texas Com. App., 1926,

280 S.W. 759; Benat v. Dallas County, Texas Civ. App., 1924, 266 S.W. 539, wr. ref., and Gabbert v. City of Brownwood, Texas Civ. App., 176 S.W. 2d 344.

We do not here question the correctness of the proposition that under "existing laws" the county may not condemn lands situated within the confines of a city, but it does not thereby follow that the Legislature thus intended to limit the condemnatory powers of he Authority. Rather we think the phrase "in accordance with and subject to the provisions of any and all existing laws and statutes applicable to the exercise of the power of condemnation for public use" refers to the applicable rules of procedure and particularly so when the section empowers the Authority to condemn "any land, property rights, rights-of-way, franchises, easements or other property deemed necessary or appropriate for the construction of the efficient operation of any Turnpike Project."

In addition to the powers granted in Sec. 8, quoted in part above, the Act authorized the Authority to purchase or condemn public or private lands, including public parks, playgrounds and reservations as it may deem necessary for carrying out the provisions of the Act. The term "owner" is defined to include counties, cities, political subdivisions, districts and all public agencies.

The Authority is specifically authorized to change, reconstruct and relocate any existing highway. The term "highway" is defined as comprehending any road, highway, farm-to-market road or street under the supervision of the State, any county, any political subdivision or any city or town.

The Authority is empowered to do all acts and things necessary or appropriate to carry out the powers expressly granted by the Act. The Act provides for liberal construction to effect the purposes intended and is to take precedence over any other law which may be in conflict or inconsistent with its provisions.

Section 17 directs the Authority to proceed immediately with the construction of the "Dallas-Fort Worth Turnpike." It requires that this Project "shall extend from a convenient connecting point in the principal East-West highway artery through the City of Dallas in Dallas County, to a convenient connecting point in the principal East-West highway artery through the City of Fort Worth in Tarrant County along a route to be approved by the Highway Commission of the State of Texas,

to be situated for the greater part of its length between United States Highway No. 80 and State Highway No. 183 * * *."

The Attorney General construes this section, as we do also, as meaning that the Turnpike will begin at some point within the City of Dallas and end at some point within the City of Fort Worth but he insists that such legislative directive does not grant the power of eminent domain over land within the city boundaries. He cites International Bridge and Tramway Co. v. McLane, 1894, 8 Texas Civ. App. 665, 28 S.W. 454. The appellant in that case was a private corporation chartered under the laws of Texas and empowered and authorized to construct a bridge and to collect tolls. The Legislature had granted no right of eminent domain to it. The effect of the court's holding was that the mere fact that it had the power to build a bridge did not carry with it the implied power of eminent domain any more than a private corporation incorporated for the purpose of building a warehouse would have the right to condemn property for that purpose. We would be inclined to agree with the Attorney General that Section 17 standing alone would not confer the power of eminent domain, but the entire Act must be construed in the light of all of its provisions, obligations and requirements. Similar Turnpike Acts have been construed and upheld in other jurisdictions. State ex rel Ohio Turnpike Commission v. Allen, 158 Ohio St. 168, 107 N.E. 2d 345; City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 81 Atl. 2d 705; People ex rel Curren v. Schommer, 392 Ill. 17, 63 N.E. 2d 744, 167 A.L.R. 1347.

The Honorable A. B. Culbertson of the Fort Worth Bar, amicus curiae, argues that the bond issue approval was properly refused because (1) it is violative of Secs. 50 and 52b, Art. 3, Constitution of Texas, (2) that the Authority is not empowered to build the toll road from a point within the City of Fort Worth to a point within the City of Dallas because the statute authorizes and directs the construction of the toll road "between" the two cities, (3) the requirement of Art. 6674v that the three highway commissioners be named as ex-officio directors of the Toll Road Authority violates Art. 16, Sec. 40, Constitution of Texas, prohibiting a public official, elective or appointive, from holding more than one civil office of emolument at the same time.

■ Under Section 20 the State Highway Commission is authorized at the request of the Authority to advance funds for preliminary expenses, the State Highway Commission to be reim-

bursed from sale of Turnpike revenue bonds. It is urged that this provision conflicts with Sections 50 and 52b, Art. 3, Constitution of Texas, the latter section being the amendment to the Constitution adopted at the last General Election.[2]

The Legislature appropriated funds to defray the preliminary expenses of the Lower Neches Valley Authority to be repaid "from the first revenues of the Authority." Refusal of the Attorney General to approve the bonds issued by the Authority was upheld by this Court for the sole reason that the bond proceedings made no provision for the repayment to the State of the funds advanced. Lower Neches Valley Authority v. Mann, 140 Texas 294, 167 S.W. 2d 1011.

In the present case the trust agreement executed by the Turnpike Authority expressly provides for the repayment of the advances by the Highway Commission out of the proceeds of the bonds.

■ The new constitutional provision, Art. 3, Sec. 52b became effective in November, 1954, and is not retroactive. Article 6674v was enacted by the Legislature in 1953 and whatever funds have been advanced by the Highway Department came from appropriations made by the Legislature in 1953 for the biennium ending August 31, 1955. We think any appropriation made in 1953 would in no way be affected by the recent amendment. The money has been advanced to the Turnpike Authority and expended. Even if this advancement of funds called for in Section 20 violates Sections 50 and 52b, Art. 3 of the Constitution, upon which point we expressly do not pass, the severability clause in the Act applies and the remainder of the Act will be upheld. The provisions of that section are merely temporary and incidental to the overall purposes of the Act. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 69 Atl. 2d 875. As used in its literal sense the word "between" usually denotes an intervening space or distance between two objects and has the effect of excluding the boundaries. Blackstone's Law Dictionary, 1953, p. 83; Louisville & N. R. Co. v. Lord, 186 Ala. 119, 65 So. 153; City of Philadelphia v. Citizens' Pass Ry. Co., 151 Pa. 128, 24 Atl. 1099. However, from a construction of the entire Act we

---

2.—"'Sec. 52-b. The Legislature shall have no power or authority to in any manner lend the credit of the State or grant any public money to, or assume any indebtedness, present or future, bonded or otherwise, of any individual, person, firm, partnership, association, corporation, public corporation, public agency, or political subdivision of the State, or anyone else, which is now or hereafter authorized to construct, maintain or operate toll roads and turnpikes within this State.'"

think the word was not used by the Legislature in an exclusionary sense or to prohibit the construction of the toll road partly within the limits of the two cities. Rather the word designates the termini of the route. State v. Haynes, 175 Ark. 645, 300, S.W. 380. Section 17 of the Act says the toll road shall extend from a convenient connecting point in the principal East-West highway artery through the City of Dallas to a convenient connecting point in the principal East-West highway artery through the City of Fort Worth. This empowers the Authority in its discretion to select the point at which the toll road will connect with the principal existing traffic artery.

If the construction of the road was limited to begin at the boundary line of one city to the boundary of the other the value of the road and the purposes for which it is designed, namely: to facilitate vehicular traffic, to effect traffic safety, to construct modern expressways, to provide better connections between highways of this and adjoining cities, would be largely lost and rendered ineffectual. If traffic is to be facilitated the congestion and hazards within the city must be to some extent eliminated.

■ A sufficient answer to Point 3 is that the services of the Highway Commissioners as directors ex-officio of the Toll Road Authority are without compensation and the office is not one of emolument. State ex rel Brennan v. Martin, Texas Civ. App., 51 S.W. 2d 815 (no writ) ; First Baptist Church v. City of Fort Worth, Texas Com. App., 26 S.W. 2d 196; Eucaline Medicine Co. v. Standard Inv. Co., Texas Civ. App., 25 S.W. 2d 259, wr. ref.; Jones v. Alexander, supra.

■ The Legislature may impose upon statutory officials extra duties. The office of Highway Commissioner is statutory in origin and clearly the Legislature in its discretion may determine the duties of such office. For example, the State Tax Board is composed of the Comptroller, Secretary of State and the Attorney General. Art. 7041. This statute has been upheld against constitutional attack. Lively v. Missouri, K. & T. R. Co. of Texas, 102 Texas 545, 120 S.W. 852.

On this point, Thomas v. Abernathy County Line Independ-

ent School District, Texas Com. App., 290 S.W. 152 is cited. In that case it was held that school trustees could not qualify as aldermen, not for the reason that they would be holding more than one office of emolument, but because the two positions were incompatible on account of possible conflict of discretion or duty. Therefore, said the court, it was immaterial whether the office were of emolument or not. Here there is no possibility of incompatibility or conflict. The offices are not incosistent. The toll road when completed will in effect be a part of the highway system of the State and when the bonds are retired through the collection of tolls, the toll road, together with all assets of the Authority will become the property of the State of Texas as a part of the free highway system, Section 18, and shall thereafter be maintained by the State Highway Commission free of tolls, Section 19. The supervision and control over toll roads given to the Highway Commission by this Act conforms to the duties imposed under Art. 6665, Vernon's Civil Statutes.

We find nothing in our State Constitution that expressly or by necessary implication prohibits the Legislature from enacting the statute here under consideration. The mandamus will therefore be issued as prayed for.

Opinion delivered May 11, 1955.