

# THE ATTORNEY GENERAL
## OF TEXAS

May 26, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Ray Farabee
Co-Chairman
Joint Special Committee on
   Cogeneration
Texas State Senate
P. O. Box 12068
Austin, Texas   78711

Opinion No. JM-709

Re: Constitutionality of proposed statute authorizing state agencies to contract for the installation, operation and financing of co-generation units

Honorable James E. (Pete) Laney
Co-Chairman
Joint Special Committee on
   Cogeneration
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Gentlemen:

As Co-Chairmen of the Joint Special Committee on Cogeneration, you ask whether article III, section 49, of the Texas Constitution prohibits contracts between state agencies and third-party vendors for the installation, operation, and financing of cogeneration units to be repaid over a period of years from energy savings. You indicate that the committee intends to recommend legislation authorizing state agencies to enter into such contracts. Your concern is that article III, section 49, a section that prohibits the state from creating debt or authorizing the creation of debt on behalf of the state, prevents such contracts.

Section 49 of article III provides:

> No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; and the debt created to supply deficiencies in the revenue, shall never exceed in the aggregate at any one time two hundred thousand dollars.

Tex. Const. art. III, §49. A history of controversy surrounds this provision. See generally Attorney General Opinion JM-666 (1987). It is not necessary to repeat that history in detail here.

The Texas Supreme Court has consistently upheld methods of avoiding this constitutional prohibition which involve the issuance of

bonds that are not secured by the full faith and credit of the state. For example, in Texas National Guard Armory Board v. McCraw, 126 S.W.2d 627 (Tex. 1939), the court upheld the creation of an authority to issue bonds to acquire buildings to be leased to the state for a rental amount adequate to maintain the buildings, to pay the interest on the bonds, and to eventually retire the bonds. In the Armory Board case, the court relied on the fact that the whole process depended upon the execution of a new lease every two years. Without an "optional" two-year renewal, the state would be obligated beyond current revenues, see Tex. Const. art. VIII, §6, and would therefore be in violation of article III, section 49. See Armory Board, 126 S.W.2d at 634-35. In Texas Turnpike Authority v. Shepperd, 279 S.W.2d 302 (Tex. 1955), the court upheld the creation of a turnpike authority to finance a highway system by issuing bonds payable solely from highway tolls and concessions. Even if highway revenues were insufficient to retire the bonds, bondholders had no recourse against the credit of the state. 279 S.W.2d at 305. The court relied on the Armory Board case and determined that this financing plan did not create a debt in violation of article III, section 49, of the Texas Constitution. See 279 S.W.2d at 304. In Texas Public Building Authority v. Mattox, 686 S.W.2d 924, 928 (Tex. 1985), the court again relied on the Armory Board case. The court upheld legislation creating an agency to issue and sell bonds to finance the acquisition, construction, and improvement of buildings used by state agencies. The principal and interest on the bonds were to be repaid by pledging all or part of the designated rents, issues, and profits from leasing a building to the state or by obtaining funds from any other lawful source. The court held that the act did not create a debt of the state. 686 S.W.2d at 928.

You have not submitted to this office specific proposed legislation outlining the essential terms that the proposed cogeneration contracts would include. So long as such legislation and contracts executed pursuant to the legislation comply with the guidelines set forth in the Building Authority case, Texas courts would not find the legislation invalid under section 49 of article III. The situation presented by your request is somewhat different than that presented in the Armory Board case and its progeny. In these cases, legislation created an agency to issue bonds to finance certain projects. Your request involves a contract with a private party to build cogeneration units. Application of the principles announced by the Texas Supreme Court to your situation would require that the private party agree that its recourse is not against the credit of the state.

You indicate that the contemplated legislation would authorize contracts for the private construction, operation, and maintenance of cogeneration units for which a state agency would pay an amount of money over a period of years, based on a percentage of the amount of money operation of the unit saved the agency. You indicate that payment would continue until an amount determined by the contract had been paid. Some contracts may require payment for less than five

years, others may require payment for more than seven years.  In City of Tyler v. L.L. Jester & Co., 78 S.W. 1058, 1062 (Tex. 1904), the Texas Supreme Court held that a contract for the delivery of water for a number of years did not create an unconstitutional debt of the city because the liability of the city arose only upon the city's use of water during each year.  In Charles Scribner's Sons v. Marrs, 262 S.W. 722 (Tex. 1924), the supreme court upheld a contract between the State Textbook Commission and a private party to purchase books for five years because the state's obligation was not to buy a fixed number of books over five years but to buy only the number of books needed in any given year, to be purchased out of the current fund for that year. In City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex. 1966), the supreme court considered an agreement by the city to furnish a state hospital with water "as long as the State of Texas shall in good faith retain and operate said hospital on said site."  The court upheld the contract.  See 404 S.W.2d at 814-15.  This office has considered previously the express language that contracts must contain in order to comply with article III, section 49, of the Texas Constitution.  See, e.g., Attorney General Opinions M-656 (1970); M-253 (1968).  Without specific legislation to review, however, it is impossible to determine conclusively whether the contemplated contracts violate article III, section 49, or other constitutional provisions.

## S U M M A R Y

Legislation authorizing state agencies to enter into contracts with third-party vendors for the installation, operation, and financing of cogeneration units to be repaid from energy savings that follows the guidelines in Texas Public Building Authority v. Mattox, 686 S.W.2d 924 (Tex. 1985) and Charles Scribner's Sons v. Marrs, 262 S.W. 722 (Tex. 1924), would not create a debt in violation of article III, section 49, of the Texas Constitution.

Very truly yours

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General