

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 12, 1990

Honorable John Whitmire
Chairman
Health And Human Services
   Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.  JM-1259

Re:  Authority of a municipal utility district operating under chapter 54 of the Water Code to acquire real property for use as a park, and related questions  (RQ-2056)

Dear Senator Whitmire:

You have requested a clarification of Attorney General Opinion JM-1173 (1990).  Specifically, you ask whether it is permissible for a municipal utility district created pursuant to article XVI, section 59, of the Texas Constitution and operating under chapter 54 of the Texas Water Code, to use revenue notes to finance the acquisition of park land and park facilities.

Municipal utility districts are among the conservation and reclamation districts created pursuant to article XVI, section 59 of the Texas Constitution [the "conservation amendment"].  The conservation amendment was added to the constitution in 1917.  Subsection (a) of the conservation amendment consists of a statement of public policy and includes a listing of public purposes that the amendment is intended to address.  Subsection (a) reads as follows:

> (a)  The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal

> waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

Subsection (c) of the conservation amendment provides for taxing power and the power to incur debt. Subsection (c) reads as follows:

> (c) The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as any [may] be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted.

This office recently held that "a municipal utility district, operating under chapter 54 of the Texas Water Code may not use taxes to purchase real property for the independent purpose of having it used as a public park and developed recreational area. . . ." Attorney General Opinion JM-1173 (1990). The opinion noted, however, that the "provision of recreational facilities may be considered a proper secondary activity for a district if furnishing them promotes a constitutional purpose." Id. See also Attorney General Opinion MW-313 (1981). Attorney General Opinion JM-1173 did not reach the issue of whether a municipal utility district could use non-tax funds to provide

parks. We note, in this respect, that the first sentence of the summary of JM-1173 may be misleading. That sentence reads:

> A municipal utility district operating under chapter 54 of the Texas Water Code may not purchase real property for the independent purpose of having it used as a public park.

However, a careful reading of the text of JM-1173 makes it clear that its holding is confined to the use of tax monies.

In Deason v. Orange County Water Control and Improvement Dist. No. 1, 244 S.W.2d 981 (Tex. 1952), the Supreme Court enjoined a district subject to the conservation amendment from issuing its bonds for the purpose of acquiring fire-fighting equipment even though an express statutory authorization for the acquisition of fire-fighting equipment was then in effect. At the time the Deason case was decided, article XVI, section 59, contained no mention of fire-fighting, though in 1978 it was amended, by the addition of subsection (f), to specifically provide that districts may engage in fire-fighting activities.[1] The Deason decision states, "The Legislature can only grant the district such powers and rights as come within the contemplation or provisions of the articles of the Constitution herein discussed," and that "the Legislature is without power to add to or withdraw from the circumstances and purposes specified" in the constitution. Deason, at 984.

In a brief submitted for our consideration in preparing this opinion[2] it is suggested that the holding in Deason is of questionable precedential value because it fails to consider the established principle that a state constitution, unlike the federal constitution, is in no sense a grant of power, but operates solely as a limitation of power, and that, therefore, an enactment of the legislature is constitutional unless expressly or implicitly prohibited

---

1. Tex. Const. art. VXI, § 59(f), adopted Nov. 7, 1978, proposed by H.J.R. No. 42, § 2, Acts 1977, 65th Leg., at 3374.

2. Brief of Hooper & Haag, Attorneys at Law, Austin, Texas, submitted on behalf of three municipal utility districts.

by a specific provision of the state or federal constitution. <u>See</u>, <u>e.g.</u>, <u>Shepherd v. San Jacinto Junior College District</u>, 363 S.W.2d 742 (Tex. 1962).   It is averred that this line of argument was not briefed to the court considering the <u>Deason</u> case.

Whether or not it was argued to the Supreme Court in <u>Deason</u> that the state constitution limits rather than grants legislative power, we think it difficult to suppose that the Supreme Court at that time was unaware of one of the most fundamental doctrines of constitutional law, or that the court failed to consider such a fundamental doctrine because it was not briefed.  The principle that the legislature may exercise any power not denied to it by the state constitution or the federal constitution is a venerable one, and hardly a novel concept even forty years ago.  <u>See</u> <u>Day Land & Cattle Co. v. State</u>, 4 S.W. 865, 874 (Tex. 1887).  Less than four years before the <u>Deason</u> decision the Supreme Court restated this rule in <u>Duncan v. Gabler</u>, 215 S.W.2d 155, 158 (Tex. 1948).  A majority of the justices sitting at the time of <u>Duncan v. Gabler</u> were also sitting at the time of the <u>Deason</u> decision.

We think it more plausible that the court in <u>Deason</u>, without explicitly so stating, was merely construing the language of the conservation amendment as limiting language despite the fact that it is drafted as though it were a grant of authority.  <u>Accord</u> Brooks, <u>County and Special District Law</u>, 36 Texas Practice § 46.5 (West, 1989).  The court cited as its rationale the principle that the fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers of the constitution and of the people who adopted it. <u>Deason</u>, <u>supra</u>, at 984.  Accordingly, it appears the <u>Deason</u> court found that the intent of the people in enacting the conservation amendment was to strictly limit the purposes for which they might be made to incur debt.

There is language in <u>Deason</u> to suggest that the legislature may never grant to a conservation and reclamation district a power not in furtherance of a purpose enumerated in the constitution (see quoted language, <u>supra</u>).  However, given the context of the narrow question before the court in <u>Deason</u>, <u>i.e.</u>, the authority of a district to issue its bonds, we think it a more reasonable reading of the court's teaching that the legislature may only grant to a district the authority to tax and incur indebtedness as specified by section 59(c) of article XVI when such authority will be used in furtherance of a constitutionally enumerated

purpose. Subsection (c) makes it clear that taxes may be authorized for two purposes: (1) to repay bonded indebtedness, and (2) for the maintenance of a district and its improvements. As both the power to incur debt and the power to tax are prescribed by subsection (c), we think it logical that the reasoning of the Deason decision extend to the purposes for which a district may expend tax revenues as well as to the purposes for which it may incur debt. At any rate, there is nothing in the language of subsection (c) to suggest that the maintenance tax may be used to acquire property. Accordingly, we reaffirm the holding of Attorney General Opinion JM-1173.

Under the analysis of the Deason decision presented above, the legislature may grant to conservation and reclamation districts duties and powers independent of those enumerated in the conservation amendment, so long as such grant of authority is not inconsistent with the constitutionally imposed limits on the authority of such districts to tax or incur debt. When the legislature grants a district authority not subject to a constitutional limitation, such authority need not, under this analysis of the Deason decision, be required to be exercised in furtherance of a constitutionally enumerated purpose. This reading of Deason is in accord with holdings of the Texas Supreme Court that the legislature is empowered to establish any form of special district unless limited by the constitution. See, e.g., Shepherd, supra, at 743; Davis v. Lubbock, 326 S.W.2d 699, 710 (Tex. 1959); Texas Turnpike Auth. v. Shepperd, 279 S.W.2d 302, 304 (Tex. 1955). As the legislature could statutorily create a special district to provide park and recreational facilities, we think it anomalous to find that such authority could not be statutorily granted to a reclamation and conservation district so long as the statutory grant of authority does not conflict with the constitutional limitations on the authority of such districts to tax and issue debt.

In Harris County Water Control & Improvement Dist. No. 110 v. Texas Water Rights Comm'n, 593 S.W.2d 852 (Tex. Civ. App. - Austin 1980, no writ), the court considered whether a municipal utility district operating under chapter 54 of the Water Code has authority to acquire certain recreational facilities, specifically, a community center, three swimming pools, four tennis courts, and a clubhouse. No reference is made in the court's decision of the method by which the facilities were to be financed or of the source of funds intended to be used for the purpose. The court found that the proposed facilities did not further a purpose of either

section 54.012 of the Water Code or article XVI, section 59, of the Texas Constitution and, consequently, the facilities could not be acquired by the district. The court in <u>Harris County W.C.I.D. No. 110</u>, specifically considered the argument that the proposed facilities were proper because they were not expressly or implicitly prohibited by the constitution. In this regard, the court stated

> In the case at bar the sole question is whether the proposed recreational facilities are permissible pursuant to acts of the Legislature, and not whether an act of the Legislature is valid.

<u>Id.</u> at 855. The holding in <u>Harris County W.C.I.D. No. 110</u> is, thus, based on the statutory purposes of municipal utility districts as set forth in section 54.012 of the Water Code. Section 54.012 closely tracks the language of article XVI, section 59(a), but states additional, albeit closely related, purposes. Article XVI, section 59(a), states no purposes which are not stated in section 54.012, though article XVI, section 59(f), provides that conservation and reclamation districts may engage in fire-fighting activities. Had the facilities at issue in <u>Harris County W.C.I.D. No. 110</u> been fire-fighting facilities instead of recreational facilities, the authority for the acquisition for such facilities could have been found in the constitution, even though fire-fighting is not enumerated as a purpose in section 54.012 of the Water Code. This is mentioned to demonstrate that the court's mention of article XVI, section 59, does not necessarily indicate that the court was basing its opinion on constitutional language, but, rather, shows that the court looked both to statutory and constitutional language in searching for authority for a district to acquire recreational facilities independent of the district's conservation function.

Since <u>Harris County W.C.I.D. No. 110</u> was decided, the legislature has amended chapter 54 of the Water Code by, among other things, adding subchapter I.[3] Acts 1985, 69th Leg., ch. 100, § 1. Subchapter I gives statutory authorization to a municipal utility district to develop and maintain recreational facilities. Water Code §§ 54.771(b) and 54.773.

---

3. Water Code §§ 54.771 through 54.775, inclusive.

The Texas Water Code specifically provides for the issuance of revenue notes by a municipal utility district. Such notes may be issued for any corporate purpose and must be paid "solely from the revenues derived from the ownership of all or any designated part of the district's works, plant, improvements, facilities, or equipment after deduction of the reasonable cost of maintaining and operating the facilities." Water Code §§ 54.302, 54.303. The notes may not constitute a charge on the property of the district or the taxes levied or collected by the district. Id. Revenue notes issued pursuant to section 54.303 would not constitute an indebtedness within the meaning of article XVI, section 59(c) of the Texas Constitution. Lower Colorado River Auth. v. McCraw, 83 S.W.2d 629, 633 (Tex. 1935).

Section 54.774 of the Water Code provides as follows:

(a)   A district may not issue bonds to pay for the development and maintenance of recreational facilities.

(b)   Except as provided in Subsection (a) of this section, a district may acquire recreational facilities and obtain funds to develop and maintain them in the same manner as authorized elsewhere in this code for the acquisition, development, and maintenance of other facilities of the district. Without limiting the foregoing, a district may charge fees directly to the users of recreational facilities to pay for all or part of the cost of their development and maintenance.

Section 54.772 of the Water Code provides as follows:

As used in this subchapter:

(1)   'Recreational facilities' means parks and recreational equipment and facilities.

(2)   'Develop and maintain' means to acquire, own, develop, construct, improve, manage, maintain, and operate.

We have established that the legislature may provide statutory purposes and powers for districts created under section 59 of article XVI of the constitution so long as those purposes and powers do not conflict with the

constitutional limitations on the authority of such districts to tax and issue debt. We have further established that the legislature has provided statutory authority for municipal utility districts to develop and maintain parks and recreational facilities, and that the issuance of revenue notes pursuant to section 54.303 of the Water Code is not constitutionally restricted. The remaining question is whether revenue notes issued under section 54.303 are "bonds" within the meaning of section 54.774(a) of the Water Code. "Bonds" is not a defined term for purposes of chapter 54 of the Water Code.

The Code Construction Act provides, in part, that:

> (a)  Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

> (b)  Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

In ordinary usage, a bond is a debt security evidencing a promise to pay the bondholder. See, e.g., Black's Law Dictionary pp. 161-164 (5th ed. 1979). The term as ordinarily used, and as in fact used in many statutes, is certainly broad enough to encompass the kind of security envisioned by section 54.303 of the Water Code. For instance, the Bond Procedures Act of 1981 defines "bonds" to include

> all bonds, certificates, notes, book-entry obligations, and other obligations authorized to be issued by any issuer by any statute, city home-rule charter, or the Texas Constitution.

V.T.C.S. art. 717k-6, § 1(b).

However, it is also a rule of statutory construction that when a word or phrase is used in different parts of a statute, a clear meaning appearing in one instance will be attached to it elsewhere. Boriack v. Boriack, 541 S.W.2d 237, 240 (Tex. Civ. App. - Corpus Christi 1976, writ dism'd); see also, 67 Tex. Jur. 3d "Statutes" § 108, and authorities cited therein. Though not defined in chapter 54 of the Water Code, the term "bond" is used extensively in subchapters E, F, and G of chapter 54. As the term is used in those subchapters, a bond is clearly distinguishable from

a revenue note.  For example, a  bond may be repaid from  ad valorem taxes, district revenues from  the  ownership  or operation of its  property, or from  a combination of  these sources.  Water Code § 54.503.   Additionally a bond may  be secured by a mortgage  lien on all or  part of the  property of the district.  Id. §  54.504.  Bonds may have  maturities of up to  forty years  from their  date of  issue, and  bear interest at  any  rate  permitted by  law.   Id. §  54.502. However, revenue notes may not have a maturity of more  than 20 years from their date of issue, may bear no more than ten per cent  interest per  year, may  not be  payable from  tax revenues of the district's property, and may not be  secured by the property  or taxes  of the district.   Id. §  54.303; see also Memorial  Point Mun.  Util.  Dist. v.  United  Sav. Ass'n of Texas,  666 S.W.2d  203 (Tex.  Civ.  App. -  Houston [14th  Dist.] 1983,  no  writ).  The  term  "bonds"  is consistently used  throughout  chapter  54  to  refer  to  a security not  subject  to  the  restrictions  applicable  to revenue notes.

Section 54.774 was  added to the  Water Code by  Senate Bill  618  (Acts  1985,  69th  Leg.,  ch.  100, § 1).   As originally  introduced,  Senate  Bill  618  provided,  under certain circumstances,  for  the issuance  of  a  district's bonds for  recreational  facilities.  Senate  Bill  618  was referred to the Senate  Committee on Natural Resources.   On March 14, 1985, it was reported adversely, with a  favorable committee substitute.   The  committee  substitute  contains section 54.774 in the  form eventually enacted into law.  The bill analysis of  the committee substitute  for Senate  Bill 618 states:

> The right  of MUDs  to own,  operate,  and finance parks and recreational facilities  is being questioned by  the Department of  Water Resources.  The department concluded that  it is probable that affluent districts would  be able to  take  on the  additional  burden  of providing  recreational  facilities  without serious problems. However,  with respect  to newly  formed  districts  without  a  sound financial base, and other districts providing recreational facilities could be very  severe and  probably  in  many  instances  ruinous. Also,  they  suggest  that  the  opportunity exists for the abuse of the district's taxing power by developers  who wish  to  construct recreational facilities as a means to attract home buyers within a new subdivision with the intention of  selling these  facilities to  a

district as quickly as possible so that they can be taken over and supported through tax revenues.

Additionally, the Department contended that SB 618 may be subject to a constitutional challenge. Texas Constitution, Article XVI, Section 59, which names all functions of these districts, does not mention the word 'recreation' and such a function must be implied, if it does exist. There are legal arguments pro and con but the leading case in this field, <u>Deason vs. Orange County Water Control Land Improvement District No. 1</u> (1952), held that districts lacked the constitutional authorization; either expressed or implied, to provide firefighting equipment, although an express statutory authorization for such firefighting equipment was then in effect. It is quite possible that under the precedent of the Deason case, legislation authorizing districts to provide recreational facilities and equipment could be declared unconstitutional. In this case, the Department would close down existing parks and recreational facilities.

The bill analysis of the committee substitute shows that the legislature was mindful of the constitutional difficulties presented by the <u>Deason</u> case as well as the problems inherent in permitting a district's tax base to be encumbered by recreational facilities which might be of more benefit to a developer's short-term marketing strategy than to the long-term fiscal health of the district. The prohibition found in subsection (a) of section 54.774 against the issuance of bonds to fund recreational facilities seems aimed at avoiding constitutional restrictions on the issuance of debt and untoward encumbrances on a district. As revenue notes do not permit encumbering either the taxes or the property of the district, and as their use is not constitutionally restricted, it appears that such a funding mechanism may well have been within the contemplation of the legislature in enacting subsection (b) of section 54.774.

Accordingly, we believe that the term "bonds" as used in section 54.774 of the Water Code is consistent in meaning with the use of the term elsewhere in chapter 54, and does not include "revenue notes" as provided for by section 54.303. Your question is answered in the affirmative: it

is permissible for a municipal utility district created pursuant to article XVI, section 59, of the Texas Constitution and operating under chapter 54 of the Texas Water Code, to use revenue notes to finance the acquisition of park land and park facilities.

### S U M M A R Y

It is permissible for a municipal utility district created pursuant to article XVI, section 59, of the Texas Constitution and operating under chapter 54 of the Texas Water Code, to use revenue notes to finance the acquisition of park land and park facilities.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by John Steiner
Assistant Attorney General