

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

December 20, 1957

Honorable Olin Culberson
Chairman, Railroad Commission of Texas
Austin, Texas

Opinion WW-328

Re: Railroad Commis-
sion jurisdiction
of motor carrier
and motor bus
operations over
Dallas-Fort Worth
Turnpike.

Dear Judge Culberson,

We are in receipt of your letter of October 22,
1957, wherein you request our opinion on the following
questions:

"1. Is the Dallas-Fort Worth Turnpike and
the use of it for hauling for hire under the
jurisdiction of the Railroad Commission as is pro-
vided by Texas Civil Statutes, Article 911b?

"2. Is it necessary for any person operating
a truck and hauling for hire to have a certificate
of authority from the Railroad Commission to
engage in such activity?"

as well as another letter from you dated October 22, 1957,
in which you ask the following additional question, which
we designate as No. 3, to-wit:

"3. Is it necessary for the operator of a
bus in the Dallas-Fort Worth area to have a permit
from the Railroad Commission authorizing him to
operate over the Dallas-Fort Worth Turnpike under
Texas Civil Statutes, Article 911a?"

You state that the Railroad Commission of Texas is
confronted with a growing situation with reference to
transportation for hire in the area between Fort Worth,
Arlington, Grand Prairie and Dallas on the new Dallas-Fort
Worth Turnpike; that the city limits of each of the above
named cities are contiguous to each other with the excep-
tion of a small area on the Fort Worth end, where the Turn-
pike from the Dallas direction has already traversed about
three and one-half miles within the incorporated city of
Fort Worth, then goes into an unincorporated area for about
two miles, and again enters the incorporated limits; and
that the city limits of each of the adjoining and contiguous

cities have been extended in most instances to the north line of the right-of-way of the Dallas-Fort Worth Turnpike, so as to include the Turnpike within the limits of the respective cities.

While you have submitted the questions with reference to motor carrier transportation separate from the question as to motor bus transportation, we have considered that the questions submitted should be disposed of in one opinion since they deal with related subjects.

The authority of the Railroad Commission of Texas to regulate motor carrier operations over the public highways of this State is found in Article 911b of Vernon's Civil Statutes of Texas, as amended. Prior to the passage of the Texas Turnpike Statute (Article 6674V,) the answer to the first two questions above listed would be made to depend on the construction of the term "motor carrier" as that term is defined in Article 911b, Section 1, subparagraph (g), wherein it is stated:

"The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns, or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

The authority of the Railroad Commission of Texas to regulate motor bus transportation over the public highways of this State is found in Article 911a of Vernon's Civil Statutes of Texas, as amended. Prior to the passage of the Texas Turnpike Act above mentioned, the answer to the third question above listed would depend on the construction of a "motor bus company" as that term is defined in Article 911a, Section 1, subdivision (c), wherein it is stated:

"(c) The term 'Motor Bus Company' when used in this Act means every corporation or persons as herein defined, their lessees, trustees, receivers, or trustees appointed by any court whatsoever, owning, controlling, operating or managing any

motor propelled passenger vehicle not usually
operated on or over rails, and engaged in the
business of transporting persons for compensa-
tion or hire over the public highways within
the State of Texas, whether operating over fixed
routes or fixed schedules, or otherwise; pro-
vided further, that the term 'Motor Bus Company'
as used in this Act shall not include corpora-
tions or persons, their lessees, trustees, or
receivers, or trustees appointed by any court
whatsoever, insofar as they own, control, operate,
or manage motor propelled passenger vehicles
operated wholly within the limits of any incor-
porated town or city, and the suburbs thereof,
whether separately incorporated or otherwise."

Under these definitions of a "motor carrier"
and "motor bus company", the jurisdiction of the Railroad
Commission over transportation for hire over the Dallas-
Fort Worth Turnpike would turn on whether the Turnpike is
a public highway, and whether the provisos in Art. 911b,
Section 1(g), and Art. 911a, Section 1(c) which exclude
strictly local operations from the statutory definition
of a motor carrier and motor bus company, respectively,
are applicable to the operations involved.  The Texas
Turnpike Act, however, authorizing the construction of
the Dallas-Fort Worth Turnpike, specifically covers this
subject matter and clearly confers jurisdiction of
transportation for hire over the Turnpike to the Railroad
Commission.  This Act, now carried as Article 6674V,
Vernon's Annotated Civil Statutes (House Bill 4, chapter
410, Acts, 53rd Legislature, Regular Session, page 967),
provides in Section 4(c) thereof as follows:

"Provided, however, any 'Project' or
'Turnpike Project' which the Authority may con-
struct under the authority of this Act shall at
all times be deemed a public highway within the
meaning of Chapter 270, page 399, Acts, Fortieth
Legislature, 1927, as amended, by Chapter 78,
page 196, Forty-first Legislature, First Called
Session, 1929, and Chapter 314, page 698, Acts,
Forty-first Legislature, 1929, as amended by Chap-
ter 277, page 480, Acts, Forty-second Legislature,
1931, as amended by Chapter 290, page 463, Acts,
Forty-seventh Legislature, 1941, and to that end
no motor bus company, common carrier motor
carrier, specialized motor carrier, contract
carrier or other motor vehicle operation for
compensation and hire shall be conducted thereon
except in accordance with the terms and provisions
of Chapter 270, page 399, Acts, Fortieth Legis-
lature, 1927, as amended by Chapter 78, page 196,

Acts, Forty-first Legislature, First Called
Session, 1929, and Chapter 314, page 698, Acts,
Forty-first Legislature, 1929, as amended by
Chapter 277, page 480, Acts, Forty-second
Legislature, 1931, as amended by Chapter 290,
page 463, Acts, Forty-seventh Legislature,
1941." (Emphasis added.)

The Acts of the Legislature referred to in the
above Article are Articles 911a and 911b, and Vernon's
Ann. P.C. Articles 1690a and 1690b.

Considering the Texas Turnpike Act in connection
with the Texas Motor Bus Act and the Texas Motor Carrier
Act, we answer each of the three questions above listed in
the affirmative. The language of the Legislature in the
above quoted portion of the Turnpike Act clearly evidences
a legislative intent that all operations for hire over
any turnpike constructed under the provisions of that Act
are operations over a public highway "within the meaning"
of the Motor Bus and Motor Carrier Acts, and that a motor
bus or motor carrier certificate or permit is required
to conduct any operations for compensation and hire over
all or any part of such turnpikes.

We are of the further opinion that even
without the specific provisions of the Turnpike Act quoted
above, the answers to your questions would be in the affirm-
ative. A person operating a motor truck for hire from
Dallas to Fort Worth, under the facts stated, necessarily
traverses a highway between two incorporated cities and
such vehicle is not operated exclusively within the incor-
porated limits of cities or towns, and he is thus a motor
carrier as that term is defined in Art. 911b, Section 1(g).
Similarly, a person engaged in transporting persons for
hire by motor bus from Dallas to Fort Worth is a motor bus
company as that term is defined in Art. 911a, Section 1(c),
as such passenger vehicle is not operated wholly within
the limits of any incorporated city or the suburbs thereof.

Some question might arise under Article 911b as
to whether motor carrier operations between the other
cities on the Turnpike are excluded from the jurisdiction
of the Commission because the cities are contiguous. This
department has had occasion to construe the Motor Carrier
Act, and specifically Section 1(g), on various occasions.
In opinion No. O-1592 an exhaustive review of the legisla-
tive history of Section 1(g) is set forth, including the
definition of a motor carrier as contained in the 1929
Act and the committee recommendations, House and Senate
amendments and committee reports on the 1931 Act, which
among other changes not here pertinent, amended the defin-
ition of a motor carrier to its present form. This opinion,

and other opinions on this subject such as opinions No. 0-1497, No. 0-3449 and 0-3449-A, and No. 0-3535, uniformly hold that the Railroad Commission does not have jurisdiction over transportation from an incorporated city or town to an unincorporated town or area, where there are no incorporated towns between the two, since no portion of the transportation or route is between or through two or more incorporated cities; but if the route passes into or through a second incorporated city, then such transportation is under the jurisdiction of the Commission.

In none of these opinions, nor in any part of the Motor Carrier Act, do we find anything to indicate that the distance between the incorporated city and the unincorporated town or the distance between the two incorporated cities or the contiguity of each to the other determines the jurisdiction of the Railroad Commission.

It is true that the use of the word between in the phrase ". . .where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed" could be argued as denoting or requiring an intervening space or distance between the two cities. Such a strict construction is not in keeping with the overall purposes of the Act. In Texas Turnpike Authority v. Sheppard, 279 S.W.2d 302 (Sup. Ct., 1955), the Court disposed of a contention that the bond issue approval was properly refused because the Turnpike Authority was not empowered to build the toll road from a point within the city of Fort Worth to a point within the city of Dallas, because the statute authorized and directed the construction of a toll road between "the two cities," by stating:

> "As used in its literal sense the word 'between' usually denotes an intervening space or distance between two objects and has the effect of excluding the boundaries. Blackstone's Law Dictionary, 1953, p. 83; Louisville & N.R. Co. v. Loyd, 186 Ala. 119, 65 So. 153; City of Philadelphia v. Citizens' Pass. Ry.Co., 151 Pa. 128, 24 A. 1099. However, from a construction of the entire Act we think the word was not used by the Legislature in an exclusionary sense or to prohibit the construction of the toll road partly within the limits of the two cities. Rather the word designates the termini of the route. . . .

> "If the construction of the road was limited to begin at the boundary line of one city to the boundary of the other the value of the road and the purposes for which it is designed, namely: to

facilitate vehicular traffic, to effect traffic
safety, to construct modern expressways, to pro-
vide better connections between highways of this
and adjoining cities, would be largely lost and
rendered ineffectual. If traffic is to be facili-
tated the congestion and hazards within the city
must be to some extent eliminated."

The streets of incorporated cities or towns are
also public highways. State v. City of El Paso, 135 Tex.
359, 143 S.W.2d 366; Lamkin v. State, 123 S.W.2d 662.

Considering the Motor Carrier Act as a whole, the
objectives sought to be accomplished and the obvious legis-
lative intent, as well as the previous opinions of this
department, we conclude that the Railroad Commission has
jurisdiction over all motor carrier operations over the
public highways of this State except local operations within
the limits of an incorporated city or town and operations
from an incorporated city or town where such service does
not pass into or through another incorporated city or town.

The definition of a motor bus company, Art.
911b, Sec. 1(c), differs from that of a motor carrier. The
only motor bus operations excluded from the Commission's
jurisdiction are those "wholly within the limits of any
incorporated town or city, and the suburbs thereof, whether
separately incorporated or otherwise." (Emphasis supplied.)

What constitutes a suburb of a city and whether
a city, town or village adjoining or adjacent to another
city is a suburb thereof within the meaning of the Motor Bus
Act, is necessarily a fact question. In Villalobos vs.
Holguin, 146 Tex. 474, 208 S.W.2d 871, the Supreme Court
held that the Railroad Commission of Texas did not have
authority to regulate transportation of passengers within
the limits of an incorporated city or town and the suburbs
thereof. The question had arisen whether Ysleta, Socorro,
San Eliziario and Clint and the territory between these
villages were suburbs of El Paso. The Supreme Court held
that because there were farm lands between Ysleta, Socorro,
San Eliziario, Clint and El Paso, the smaller towns named
were not suburbs of El Paso. We do not believe that the
existence of farm lands between towns is the sole criterion
for determining whether or not a town or village or an
incorporated city adjacent to or adjoining a larger town is
a suburb thereof. It may be that under the Motor Bus Act
the Railroad Commission of Texas would be authorized to
consider whether the smaller adjacent or adjoining town had
such industry and transportation problems as to be con-
sidered separate and independent from the larger town
adjoining it. The existence of terminals and depots in the

smaller town, the existence of separate industries, stores and businesses therein, which allow it to draw from the trade territory adjoining it, may be factors to be considered in determining whether it exists independently or as a suburb of an adjacent town.

It is our opinion that the courts would take judicial notice that Fort Worth is not a suburb of Dallas or vice versa. As to whether Grand Prairie and Arlington, or other communities in this general area, are suburbs of each other or of either Dallas or Fort Worth, if any doubt exists and if the occasion arises, the Commission can hear testimony on the question, in accordance with our opinion No. 0-2737. With reference to the jurisdiction of the Commission over a motor bus application proposing service from Fruitdale acres to Preston Hollow via Dallas, Highland Park and University Park, it was there stated as follows:

"The Commission can hear testimony on the question. If the evidence shows conclusively that all points involved in the operation are either within the city limits of Dallas or its suburbs, or if the Commission so finds upon disputed evidence, then the application should be dismissed, since the Railroad Commission would be without jurisdiction. On the other hand if the evidence shows beyond any dispute that some parts of the operation would be conducted outside the limits of Dallas and its suburbs, or if the Commission so finds upon contradictory testimony, the Commission would have jurisdiction to entertain the application upon its merits."

## SUMMARY

1. The Dallas-Fort Worth Turnpike and the use of it for hauling for hire is under the jurisdiction of the Railroad Commission of Texas.

2. It is necessary for any person operating a truck and hauling for hire to have a certificate of authority from the Railroad Commission of Texas to engage in such activity, and

3. It is necessary for the operator of a bus in the Dallas-Fort Worth area to have a permit from the Railroad Commission, authorizing him to operate over the Dallas-Fort Worth Turnpike

under Texas Civil Statutes, Article 911a.

Very truly yours,

WILL WILSON
Attorney General of Texas

By

J.W. WHEELER
Assistant Attorney General

MORGAN NESBITT
Assistant Attorney General

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

W.V. Geppert

John Webster

Milton Richardson

REVIEWED FOR THE ATTORNEY GENERAL
BY:
James N. Ludlum